**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION AT DAYTON**

———————————————————x
                                   :

JACQUELINE N. BARNARD, Individually,    :
and on Behalf of All Others Similarly      :    Case No. 3:13-cv-00391
Situated,                                :
                                   :    CLASS ACTION
               Plaintiffs,     :
                                   :    DEMAND FOR JURY TRIAL
      v.                         :
                                   :
                                 :
U.S. BANK, N.A.,                   :    **COMPLAINT**
                                 :
                Defendant.    :
———————————————————x

Plaintiff, Jacqueline N. Barnard (hereinafter "Barnard" or "Plaintiff"), by and through her undersigned counsel, makes the following allegations upon information and belief, except for those allegations that pertain to Plaintiff, which are based on Plaintiff's personal knowledge, against Defendant U.S. Bank, N.A. (hereinafter "U.S. Bank" or "Defendant").

## I.    INTRODUCTION

1.    Plaintiff and the Class members have mortgages secured by residential property, and were charged for lender-placed (also known as "force-placed") hazard insurance by U.S. Bank.

2.    Although mortgage lenders generally have the right to force-place insurance where the property securing the loan is not insured by the borrower, U.S. Bank has abused that right and breached its performance by (a) purchasing backdated insurance policies, (b) charging Plaintiff and similarly situated borrowers for expired or partially expired coverage, (c) arranging and contracting for, and receiving, kick-backs, commissions, or other compensation for itself

and/or its affiliates in connection with such coverage, and (d) otherwise manipulating the force-placed insurance process.

3.     Plaintiff alleges that Defendant has derived, and continues to derive, improper financial benefits by imposing force-placed insurance policies and other charges on her property, and a class of similarly situated borrowers defined in paragraphs 57-58 below (collectively the "Class"). Further, U.S. Bank improperly charged Plaintiff and the Class for U.S. Bank's procuring force-placed insurance from its contracted insurer, but did so pursuant to a pre-arranged undisclosed agreement, where it charged an inflated price for the policy and where U.S. Bank also agreed to receive commissions and kick-backs transferred back to U.S. Bank and/or its related entities from such insurer.  U.S. Bank has breached its contract with Plaintiff and the Class by, *inter alia*, entering into this unlawful kick-back scheme and overcharging Plaintiff and the Class to pay for the kick-backs.  Upon information and belief, this scheme became a large profit center for U.S. Bank.

4.     Non-party American Security Insurance Company (hereinafter "ASIC"), a subsidiary of Assurant, Inc., actively participated in this scheme, which is explained in further detail below, by issuing backdated lender-placed insurance policies for U.S. Bank and by agreeing with U.S. Bank to pay kick-backs, commissions, or other compensation to U.S. Bank in return for its business and related to Plaintiff's force-placed policy and the force-placed policies of the Class.

5.     A November 10, 2010 article in *American Banker* first revealed that force-placed insurance creates a financial windfall for the major national mortgage lenders. *See* Jeff Horowitz, *Ties to Insurers Could Land Mortgage Servicers in More Trouble*, American Banker (Nov. 10, 2010, 12:00 p.m.), http://www.americanbanker.com/issues/175_216/ties-to-insurers-servicers-in-

trouble-028474-1.html [hereinafter *Ties to Insurers*] (Ex. 1). Non-party Assurant Inc. [hereinafter "Assurant"], the parent company of ASIC, had its stock price drop 11% the day after the *American Banker* article was published.

6. Notwithstanding the deceptive kick-backs, commissions, and backdating scheme discussed in *Ties to Insurers*, internal emails reveal that numerous bank employees admitted that the rates cited in the article were "unreasonable" and needed to be changed.

7. Defendant acted capriciously, engaged in this conduct in bad faith, and in contravention of the parties reasonable expectations knowing that its actions were (a) not authorized by the mortgage contracts of Plaintiff or the Class members and (b) inconsistent with applicable law.[1]

8. Upon information and belief, Plaintiff alleges that U.S. Bank has a common business practice of preying on Plaintiff and the Class members as a means to obtain additional profits and it has engaged in such business practice in breach of the mortgage contracts.

9. Based on this conduct, Plaintiff, on behalf of herself and similarly situated Class members, asserts claims for relief against U.S. Bank for breach of contract/breach of the covenant of good faith and fair dealing (Count I), unjust enrichment (Count II), conversion (Count III), and violation of the federal Truth-in-Lending Act ("TILA") (Count IV).

10. Plaintiff, on behalf of herself and similarly situated Class members, has sued to recover damages equal to the amount of the improper and inequitable financial benefit received by Defendant and/or its affiliates as a result of these anti-consumer practices, and seeks, *inter*

---

[1] Note, Plaintiff does not challenge the rate of her force-placed hazard insurance as excessive. Rather, Plaintiff challenges, among other things, U.S. Bank's decision to purchase force-placed hazard insurance from an insurer (or insurers) that provides an improper financial benefit to U.S. Bank and/or their affiliates.

*alia*, injunctive relief, corresponding declaratory relief, monetary relief, and other appropriate relief as determined by this Court for Defendant's unlawful conduct, as described herein.

## II.     PARTIES

11.     Plaintiff is an individual residing in Kansas City, Missouri.  Plaintiff is a member of the proposed "Nationwide Kickback Class," "Nationwide Backdated Coverage Class," "Escrow Subclass," and "Missouri Subclass," as defined below.

12.     U.S. Bank is a national banking association headquartered in Ohio.  U.S. Bank conducts business throughout the United States, including in this District.  U.S. Bank Home Mortgage is a division of U.S. Bank.  U.S. Bank can be served at 425 Walnut Street, Cincinnati, Ohio 45202.

13.     Non-party ASIC is a Delaware corporation with its principal place of business in Georgia.  ASIC is a subsidiary of non-party Assurant, who, upon information and belief, maintains a central insurance processing center in this District.  Upon information and belief, Assurant's central insurance processing center handles force-placed hazard insurance processing for numerous national banking associations, lenders, and/or servicers, including U.S. Bank, and certain practices alleged herein were carried out (on U.S. Bank's behalf) through Assurant's operations center located at One Assurant Way, Springfield, Ohio (Clark County).

### III.    JURISDICTION AND VENUE

14.    This Court has original jurisdiction of this action under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d)(2) and (6).  The amount in controversy in this action exceeds $5,000,000, exclusive of interest and costs, and Plaintiff and U.S. Bank are citizens of different states.

15.    This Court also has original jurisdiction over Plaintiff's federal claims pursuant to 28 U.S.C. § 1331.  Plaintiff's state law claims arose out of the same transaction and occurrence as her TILA claim – specifically, all claims arose out of U.S. Bank's commissions and kick-backs scheme, its efforts to increase kick-backs by requiring backdated and/or excessive insurance, and its manipulation of the force-placed insurance process – and are so related to Plaintiff's TILA claim that they form part of the same case or controversy.

16.    This Court has personal jurisdiction over Defendant because it is authorized to conduct business in Ohio (either expressly or through a wholly-owned subsidiary), is doing business in Ohio, and has registered with the Ohio Secretary of State, or does sufficient business in Ohio, has sufficient minimum contacts with Ohio, and/or otherwise intentionally avails itself of the Ohio consumer market through the promotion, marketing, origination, purchasing, and servicing of mortgages (and by engaging in other business activities) in Ohio.  This purposeful availment renders the exercise of jurisdiction by this Court over Defendant and its affiliated or related entities permissible under traditional notions of fair play and substantial justice.

17.    Venue is proper in this forum pursuant to 28 U.S.C. § 1391 because at all times relevant hereto, U.S. Bank has conducted, and continues to conduct, business in this District and a substantial portion of the practices complained of herein occurred in this District, and/or because Defendant has received substantial compensation as a result of doing business in this

District. Moreover, at all times material to the allegations contained herein, Defendant personally and/or through an agent:

        a)    operated, conducted, engaged in, and carried on a business venture in this District or had an office or agency in this District;

        b)    engaged in substantial activity within Ohio, including in this District; and/or

        c)    Engaged in substantial activity with Assurant from Assurant's Springfield, Ohio operations center.

## IV.    FACTUAL ALLEGATIONS

### A.    Plaintiff Jacqueline N. Barnard

18.    Plaintiff owns a home in Kansas City, Missouri. On or around November 16, 2009, Plaintiff executed a deed of trust in the amount of $78,652.00 secured by her residence in Kansas City, Missouri, which was subsequently modified on September 4, 2012 [hereinafter "Barnard Mortgage"]. *See* Barnard Mortgage (Ex. 2). The Barnard Mortgage is owned and serviced by U.S. Bank and, as of February 1, 2013, its current principal balance was $77,616.97.

19.    Paragraph 4 of the Barnard Mortgage states the following:

**4.  Fire, Flood and Other Hazard Insurance.**  Borrower shall insure all improvements on the Property, whether now in existence or subsequently erected, against any hazards, casualties, and contingencies, including fire, for which Lender required insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires . . . . The insurance policies and any renewals shall be held by Lender and shall include loss payable clauses in favor of, and in a form acceptable to, Lender.

*See* Barnard Mortgage at 3, ¶ 4.

20.     Paragraph 7 of the Barnard Mortgage states the following:

**7. Charges to Borrower and Protection of Lender's Rights in the Property.**

\*          \*          \*

If Borrower fails to make these payments required by Paragraph 2 [*i.e.*, taxes and/or insurance], or fails to perform any other covenants and agreements contained in this Security Instrument, … then Lender may do and pay whatever is ***necessary to protect the value of the property and Lender's rights in the Property***, including payment of taxes, hazard insurance and other items mentioned in Paragraph 2.

*See id.*, ¶ 7 (emphasis added).

21.     On or around September 17, 2012, Plaintiff received a letter [hereinafter "Notice of Placement Letter"] from U.S. Bank, wherein U.S. Bank informed Plaintiff that she did not have sufficient hazard insurance coverage.[2] *See* Notice of Placement Letter (Ex. 3). This Notice of Placement Letter further advised Plaintiff that U.S. Bank had purchased hazard insurance for her property from ASIC. The premium cost of this policy was $1,274.00, which sum was charged to Plaintiff via an impound/escrow account for the Barnard Mortgage. Despite U.S. Bank only having a financial interest of $77,616.97 in Ms. Barnard's property, U.S. Bank purchased a force-placed hazard insurance policy with coverage in the amount of $132,700,

---

[2] The Notice of Placement Letter also referenced two previous requests, but Plaintiff has no record of ever receiving such request letters. The Notice of Placement Letter instructed Plaintiff to mail her insurance documentation to U.S Bank's office in Springfield, Ohio. However, the Springfield, Ohio address is actually for an insurance processing center operated by non-party Assurant. Moreover, U.S. Bank represents to the public through its website that it maintains an office at 1 Assurant Way, Springfield, Ohio 45505, for handling insurance claims and other insurance processing features. *See* U.S. Bank, www.usbank.com/mortgage/hazard-insurance-property-damage-forms.html (last visited Nov. 14, 2013). U.S. Bank does not rent, lease, own, or otherwise maintain an office at 1 Assurant Way, Springfield, Ohio 45505, however, and instead, this address is for Assurant's insurance processing center, which handles the requests, processing, and other issues related to force-placed insurance on behalf of U.S. Bank as well as other lenders and/or servicers.

nearly twice (2x) the amount required to protect U.S. Bank's financial interest as allowed pursuant to the mortgage terms.

22.     This force-placed hazard insurance coverage was backdated approximately three months to reflect an effective policy period beginning on June 16, 2012 and extending through June 16, 2013.

23.     On or about January 2013, Plaintiff became aware that the excessive cost of her force-placed insurance policy was the result of the alleged kick-backs and commissions scheme between U.S. Bank and ASIC.

24.     Plaintiff has paid all of the charges for this force placed insurance coverage through her escrow account.

25.     U.S. Bank purchased this force-placed hazard insurance from ASIC, and ASIC paid U.S. Bank a kick-back for purchasing this force-placed insurance policy, which was then charged to Plaintiff, consistent with ASIC's standard business practice with U.S. Bank. *See* Ex. 3 at 2 ("Part of the premium may be used by the insurance company to reimburse [U.S. Bank] ….").

26.     While the Barnard Mortgage may authorize U.S. Bank to charge Plaintiff for certain costs necessary to protect its financial interest in Plaintiff's property, it does not authorize U.S. Bank to charge Plaintiff's account for fees or costs that are not actually incurred by U.S. Bank or that are later refunded to U.S. Bank in the form of kick-backs, commissions, or other compensation. What is more, the Barnard Mortgage does not authorize U.S. Bank to charge Plaintiff for excess insurance coverage in an effort to obtain a larger kick-back or commission, or for an insurance policy that has been backdated to cover a period for which a loss cannot occur,

as such coverage is not necessary to protect U.S. Bank's financial interest in the property, but serves only to increase the size of U.S. Bank's kick-back, commission, or other compensation.

**B.      Force-Placed Insurance Background**

27.    In order to ensure that the mortgagee's interest in the secured property is protected, mortgage contracts typically allow the lender or servicer discretion to "force-place" hazard insurance to protect the lender's financial interest when the homeowner fails to maintain the proper amount of insurance, with the amounts disbursed for the procurement of such insurance becoming additional debt secured by the mortgage.  Plaintiff's FHA mortgage contract contains such a provision.

28.    The discretion afforded to U.S. Bank to force-place insurance is limited, however, by the bounds of reasonable conduct, good faith, and by the express terms of the mortgage itself. U.S. Bank routinely exceeds the bounds of reasonableness and the spirit, intent, and letter of the mortgage contract by (1) force-placing backdated and/or excessive hazard insurance coverage; (2) accepting kick-backs, commissions, or other compensation in connection with such coverage; and (3) otherwise manipulating the force-placed insurance process.

29.    Specifically, standard mortgage contracts, like the FHA mortgage secured by Plaintiff's property, do not disclose that the lender or loan servicer will receive an improper financial benefit (regardless of the form) in connection with force-placed hazard insurance. Instead, these contracts only state that the lender may take ***necessary*** action for the purpose of protecting the ***lender's interest*** in the secured property.  Likewise, the Notice of Placement of Insurance letter sent to Plaintiff advising her that a policy had been force-placed misrepresents that Plaintiff is being charged for "***expenses*** in obtaining this insurance." To the extent that a portion of the premium payments for force-placed hazard insurance coverage was kicked back to

U.S. Bank or its affiliates by ASIC, U.S. Bank has incurred no actual "expense" in connection with that portion of the premium and improperly charges borrowers for the gross premium instead of the net cost to U.S. Bank.

30.     Due to the insidious kick-back arrangements between force-placed insurers (such as ASIC) and mortgage servicers (such as U.S. Bank), force-placed hazard insurance policies are almost always more expensive than standard insurance coverage. *See* Ex. 3 at 2 ("The cost of insurance we purchase is likely to be much higher than the insurance you obtain on your own."). Reportedly, such policies can cost as much as ten times more than standard policies. While the force-placed insurance policy is primarily for the benefit of the lender, the excessive cost, which results from the kick-backs, commissions, and/or reinsurance payments contained in the premium, is passed on to the borrower. This kick-back scheme between U.S. Bank and Assurant and its subsidiaries violates the terms of the mortgage. *See Ties to Insurers*; *see also American Banker Wins Investigative Journalism Award*, American Banker (Mar. 18, 2011, 1:07 p.m.), http://www.americanbanker.com/news/sabew-1034635-1.html (Ex. 4).

**C.     ASIC Pays Kickbacks or "Commissions" to U.S. Bank and Other Mortgage Servicers in Connection with Force-Placed Hazard Insurance**

31.     The force-placing of hazard insurance policies is a very lucrative business for mortgage servicers such as U.S. Bank. Upon information and belief, U.S. Bank has a common practice of selecting the provider in accordance with a pre-arranged agreement and force-places the policy in such a way as to receive an improper financial benefit. According to a recent article published by *American Banker*, "a cursory review of force-placed insurers' financials suggests that the business brings servicers hundreds of millions of dollars every year." *See Ties to Insurers*, *supra* (noting that servicers demand generous commissions and other payments in return for their referrals). Although U.S. Bank has tried to keep its own commission

arrangement with ASIC secret, it is well-known that ASIC pays millions of dollars in commissions each year to banks, lenders and/or loan servicers, including U.S. Bank, that force-place hazard insurance coverage through ASIC or another subsidiary of its parent company Assurant, Inc.

32.     Numerous court opinions have exposed and called into question the commissions that Assurant and/or ASIC pay to their mortgage servicer clients, including U.S. Bank.  *See, e.g.*, *Hutchings v. Nationstar Mortg., LLC*, No. 1:13-CV-00569, 2013 WL 5670939 (N.D. Ohio Oct. 16, 2013); *Casey v. Citibank, N.A.*, 915 F.Supp.2d 255 (N.D.N.Y. Jan. 2, 2013); *Gallow v. PHH Mortg. Corp.,* 916 F.Supp.2d 537 (D.N.J. Dec. 31, 2012); *Ellsworth v. U.S. Bank, N.A.*, 908 F.Supp.2d 1063 (N.D. Cal. Dec. 11, 2012); *Montanez v. HSBC Mortg. Corp. (USA)*, 876 F.Supp.2d 504 (E.D. Pa. 2012); *Hofstetter v. Chase Home Fin. LLC*, No. 10-131, 2011 WL 1225900 (N.D. Cal. Mar. 31, 2011); *McNeary-Calloway v. JP Morgan Chase Bank, N.A.*, 863 F.Supp.2d 928 (N.D. Cal. Mar. 26, 2012); *Gipson v. Fleet Mortg. Group, Inc.*, 232 F.Supp.2d 691 (S.D. Miss. Nov. 7, 2002); and *Stevens v. Citigroup, Inc.*, 00-3815, 2000 WL 1848593, at *1, 3 (E.D. Pa. Dec. 15, 2000).

33.     In addition, in September 2013, Assurant and a major-lender agreed to a $300 million settlement to resolve accusations that they forced homeowners into buying overpriced property insurance and entered into kick-back arrangements that inflated policy prices. *See JPMorgan and Insurer Settle Suit*, DealBook (Sept. 9, 2013), http://dealbook.nytimes.com/2013/09/09/jpmorgan-and-insurer-settle-suit/?nl=business&emc= edit_dlbkam_20130910&_r=1 (Ex. 5).  The class-action lawsuit said the force-placed insurance practices unjustly enriched the lender and Assurant by more than $1 billion since 2008.  *Id.*

34.     These commission arrangements, such as commonly practiced by the Defendant, are also the subject of publicly-filed deposition testimony. For example, in the *Hofstetter* case, Chase's representative testified that it is "a standard industry-wide practice" for a mortgage lender to be paid a commission by the insurance provider in connection with lender-placed insurance. *See* Wheeler Dep. 67:5-14 (Ex. 6).[3] Like U.S. Bank, Chase procured its force-placed insurance coverage through ASIC. *Id.* at 68:16-69:14.

35.     In addition, the commission arrangements between major banks and insurance firms—including ASIC's parent company, Assurant, Inc.—have been reported in *American Banker* magazine. *See Ties to Insurers*, *supra*.[4]

36.     Under this payment arrangement, the provider of the force-placed insurance policy pays a portion of the premium collected to the servicer or to an affiliate of the servicer posing as insurance agent,[5] either as a "commission" or "reimbursement" of the servicer's purported expenses related to force-placing insurance.

---

[3] Shortly after the deposition testimony in *Hofstetter* became public (in March 2011), Chase entered into a multi-million dollar settlement (in July 2011), under which it agreed to disgorge 100% of the commissions that it received on force-placed flood insurance for eligible class members, and permanently refrain from accepting commissions in connection with force-placed flood insurance for HELOC borrowers. Following notice to the class members, that settlement received final approval from the United States District Court for the Northern District of California (Alsup, J.) on November 14, 2011.

[4] More detailed information concerning Defendant's collection of kick-backs from force-placed insurance providers is not readily available without further discovery. As American Banker noted, "banks do not report how much they collect from such payments," and, further, force-placed insurance has been "historically an overlooked niche in the mortgage servicing industry." *See* Jeff Horwitz, *Attorneys General Draw a Bead on Banks' Force-Placed Insurance Policies*, American Banker (Mar. 10, 2011, 12:25 p.m.), http://www.americanbanker.com/issues/176_48/ags-force-placed-insurance-1034213-1.html [hereinafter *Bead on Banks' FPI Policies*] (Ex. 7).

[5] The servicer's "licensed insurance agency" exists primarily, if not exclusively, to collect the kick-backs or commissions collected from the force-placed insurance vendor.

37.    Illustrative of the typical kick-back arrangements is the following graphic from

*American Banker*:



38.    Plaintiffs and the Class members have no say or input into the carrier or terms of

the force-placed hazard insurance policies.  The terms and conditions of coverage, as well as the

cost of coverage, are determined by servicer and the insurer, rather than negotiated between the

borrower and the insurer.[6]

39.    Moreover, servicers such as U.S. Bank have no incentive to comparison shop for

coverage because the cost of coverage is borne by Plaintiff and Class members.  Rather, servicers

are financially motivated to force-place hazard insurance coverage through providers that will

---

[6] On November 5, 2013, the Federal Housing Finance Agency ("FHFA") announced that it has
directed Fannie Mae and Freddie Mac to prohibit servicers from being reimbursed for expenses
associated with captive reinsurance arrangements.  *See* FHFA Directs Fannie Mae and Freddie
Mac to Restrict Lender-Placed Insurance Practices, FHFA, November 5, 2013,
http://www.fhfa.gov/webfiles/25759/LPI_news_release_110513.pdf (last visited Nov. 14, 2013).

provide the best financial benefit to the lender and/or servicer. This is known as "reverse competition."

40. Typically, a mortgage lender and/or servicer enters into an agreement with a provider, pursuant to which it refers borrowers exclusively to the provider for force-placed insurance. For example, in its public filings, Assurant—the parent of ASIC—states that it establishes "long-term relationships" with leading lenders and servicers and that the majority of its lender-placed agreements are exclusive. *See* Assurant, Inc., 2012 Form 10-K, at 5 (Feb. 20, 2013) ("[T]he majority of our [Assurant's] lender-placed agreements are exclusive" and those contracts require Assurant "to issue these policies automatically when a borrower's insurance coverage is not maintained.") (Ex. 8).

41. Upon information and belief, U.S. Bank is party to an agreement with ASIC pursuant to which U.S. Bank or its affiliate(s) receive kick-back or "commission" payments for the referral of business to ASIC.[7]

**D. The Kickbacks Paid to U.S. Bank by ASIC Are Improper and Unjust**

---

[7] Lenders and/or servicers such as U.S. Bank typically have common practices to enter into agreements to outsource the function of "tracking" their loan portfolio for hazard insurance coverage to the same vendor that force-places coverage in the event of a lapse. *See* Fannie Mae Request for Proposal of March 6, 2012 at 2 (Ex. 9) ("Many large Servicers have chosen to outsource the Insurance Tracking and associated administrative process to third parties, the largest of which are affiliated with Lender Placed Insurers."). To the extent that those tracking services are billed below cost or below market rates, and subsidized by the insurance premiums paid by borrowers, this constitutes a second form of in-kind kick-back to the mortgage servicer. Based on the Notice of Placement Letter that Plaintiff received, which appears to have been sent by Assurant or ASIC on behalf of U.S. Bank, it appears that U.S. Bank has entered into an agreement with Assurant or ASIC to track its loan portfolio for hazard insurance coverage. Plaintiff is informed and believes based on the RFP and other publicly-available information that the tracking services performed by ASIC for U.S. Bank are not billed at reasonable market rates, and are subsidized by the insurance premiums paid by Plaintiff and other Class members.

14

42.     The kick-back arrangements between ASIC and its lender/servicer clients (including U.S. Bank) are unquestionably unjust.

43.     As noted above, numerous courts have questioned the legitimacy of these kick-back arrangements.  *See supra* at ¶ 26.

44.     In addition, these kick-back arrangements are counter to guidance issued by the United States Department of Housing and Urban Development ("HUD"), Fannie Mae, the Federal Housing Finance Agency ("FHFA"), and state regulators.

45.     HUD's Lender Guide to the Single Family Mortgage Insurance Process ("Lender Guide"), HUD 4155.2, contains a section relating to "Prohibited Payments and Loans."  *See* <u>Ex. 10</u>.  In its Lender Guide, HUD states that "[a]dvancing funds in anticipation of commissions on sales being financed with FHA-insured mortgages is prohibited."  *Id.*  In addition, the Lender Guide states that "[a] lender is *not* permitted to pay any fee, compensation, or thing of value other than for services actually performed, including kick back fees[.]"  *Id.*

46.     On March 14, 2012, Fannie Mae issued a Servicing Guide Announcement ("SGA") pertaining to force-placed insurance.  *See* SGA, <u>Ex. 11</u>.  In the SGA, Fannie Mae clarified its requirements relating to reasonable reimbursable expenses for lender-placed insurance, and stated that "reimbursement of lender-placed insurance premiums must **exclude** any lender-placed insurance commission earned on that policy by the servicer or any related entity[.]"  *Id.* at 4 (emphasis in original).

47.     Earlier that same month, on March 6, 2012, Fannie Mae issued a Request for Proposal relating to lender-placed insurance [hereinafter "RFP"].  *See* RFP, <u>Ex. 9</u>.[8]  In the RFP,

---

[8]   The RFP was labeled "Confidential" by Fannie Mae, but subsequently was published in *American Banker* magazine.  *See* Jeff Horwitz, *Fannie Mae Seeks to Break up Force-Placed*

Fannie Mae stated that it had conducted an "extensive internal review" of the lender-placed insurance process, and found that the process "can be improved through unit price reductions and fee transparency to the benefit of both the taxpayers and homeowners." *Id.* at 2. In particular, Fannie Mae made the following observations:

> a) "Lender Placed Insurers often pay commissions/fees to Servicers for placing business with them. The cost of such commissions/fees is recovered in part or in whole by the Lender Placed Insurer from the premiums[.]"
>
> b) "The existing system may encourage Servicers to purchase Lender Placed Insurance from Providers that pay high commissions/fees to the Servicers and provide tracking, rather than those that offer the best pricing and terms . . . . Thus, the Lender Placed Insurers and Servicers have little incentive to hold premium costs down."
>
> c) "[M]uch of the current legal placed insurance cost borne by Fannie Mae results from an incentive arrangement between Lender Placed Insurers and Servicers that disadvantages Fannie Mae and the homeowner."

*Id.* Accordingly, Fannie Mae stated that it sought to "[r]estructure the business model to align Servicer incentives with the best interest of Fannie Mae and homeowners." *Id.* at 3. Among other things, Fannie Mae sought to "[e]liminate the ability of Servicers to pass on the cost of commissions/fees to Fannie Mae" and to "[s]eparate the commissions and fees for Insurance Tracking Services from the fees for Lender Placed Insurance to ensure transparency and accountability." *Id.* at 2.

48. Although the RFP was later scuttled by the FHFA in February 2013 in its capacity as the conservator of Fannie Mae and Freddie Mac,[9] the FHFA has ***not*** endorsed the type of commission arrangements at issue here. To the contrary, the FHFA concluded the very next

---

*Market, Document Shows*, American Banker (May 24, 2012), http://www.americanbanker.com/issues/177_101/fannie-rfp-gse-contracting-document-1049630-1.html.

[9] *See* Jeff Horwitz, "FHFA Kills Fannie Mae Force-Placed Insurance Plan," *American Banker* (Feb. 11, 2013), available at http://www.americanbanker.com/issues/178_29/fhfa-kills-fannie-mae-force-placed-insurance-plan-1056687-1.html.

month that these kick-back/commission arrangements should be eliminated from the force-placed insurance process. Specifically, on March 29, 2013, the FHFA published a Notice in the Federal Register regarding Lender Placed Insurance. *See* FHFA, *Lender Placed Insurance, Terms and Conditions*, 78 Fed. Reg. 19263, 19264 (Mar. 29, 2013). This Notice is intended to "address certain practices relating to lender placed insurance that the [FHFA] considers contrary to prudent business practices[.]" *Id.* at 19263. The specific practices identified include "sales commissions[,]" *id.* at 19264, which the FHFA concluded present "litigation and reputation risks[.]" *Id.* at 19263. Therefore, the FHFA stated that it intends to ban such financial arrangements in connection with mortgage loans that are owned by Fannie Mae or Freddie Mac:

> Certain Sales Commissions. The Enterprises shall prohibit sellers and servicers from receiving, directly or indirectly, remuneration associated with placing coverage with or maintaining placement with particular insurance providers.

*Id.* at 19264. According to the FHFA, there are "concerns regarding conflicts" in connection with these types of commission arrangements. *Id.*.

49.     Moreover, following an extensive investigation into force-placed insurance abuses, the New York Department of Financial Services ("NYDFS") entered into a Consent Order with Assurant and ASIC, which prohibits them from paying "commissions to a servicer or a person or entity affiliated with a servicer on force-placed insurance policies obtained by the servicer." *See* Ex. 12 at 9. The Consent Order further states:

> The evidence from the Investigation indicates that the affiliated agencies and brokers do little or no work for the commissions ASIC … pay[s] them. … Commissions paid to affiliates of servicers is a form of reverse competition; when insurers compete for servicers' business by offering higher commissions to servicers' affiliates, there is no incentive to reduce force-placed insurance premium rates. Commissions are paid to affiliates of servicers because they are a cost of staying in the market, not for any particular work the affiliates perform.

*Id.* at 5-6.

50.     In addition, the California Insurance Commissioner has noted a "lack of arm's length transactions between lenders and insurers and, in some cases, a financial relationship between the lender and the insurer" that results in higher premiums and prejudices homeowners." *See* Ex. 13.

51.     These concerns are by no means limited to state regulators in New York and California.  In fact, the National Association of Insurance Commissioners ("NAIC") expresses similar "regulatory concern" on its website:

> A key regulatory concern with the growing use of lender-placed insurance is "reverse competition," where the lender chooses the coverage provider and amounts, yet the consumer is obligated to pay the cost of coverage. Reverse competition is a market condition that tends to drive up prices to the consumers, as the lender is not motivated to select the lowest price for coverage since the cost is born by the borrower. Normally competitive forces tend to drive down costs for consumers. However, in this case, the lender is motivated to select coverage from an insurer looking out for the lender's interest rather than the borrower.

http://www.naic.org/cipr_topics/topic_lender_placed_insurance.htm (last visited Nov. 14, 2013).

### E.     To Maximize the Kickbacks to Itself, U.S. Bank Improperly Charges Borrowers for Unnecessary and Excessive Hazard Insurance Coverage

52.     Motivated by the lucrative financial incentives associated with force-placing insurance, U.S. Bank has commonly required borrowers, including Plaintiff and the Class members, to pay for unnecessary or excessive insurance coverage.  Such examples include, without limitation:

(a) backdating force-placed hazard insurance policies so that they cover time periods already passed when the policy is placed, thus requiring borrowers to pay for retroactive coverage for by-gone periods of time for which no risk of loss any longer exists;

(b) requiring borrowers to pay for force-placed hazard insurance policies covering periods of time following a lapse of previous insurance despite the fact that the lender's interest in the property was covered for such time pursuant to

either a "standard mortgage clause,"[10] or lender loss payable clause in the previous policy, either of which continues the Lender's coverage following a lapse for non-payment of premium.

(c) Force-placing coverage in excess of the amount necessary to protect U.S. Bank's financial interest in the property (i.e., the outstanding principal balance).

53. Plaintiff and the Class members were subject to all of these practices. *See supra* at ¶¶ 13-20.

54. All of these practices are unfair, inconsistent with reasonable commercial practices, and unlawful.

55. The practice of backdating insurance also has been condemned by the NAIC. According to the NAIC, insurance is "prospective in nature" and policies "should not be back-dated to collect premiums for a time period that has already passed." *See, e.g.*, *Ties to Insurers*, *supra*. Consistent with this guidance, several courts have upheld claims that backdating force-placed insurance policies is unfair and/or unlawful. *See, e.g.*, *Leghorn v. Wells Fargo Bank, N.A.*, ---F.Supp.2d---, 2013 WL 3064548, at *19 (N.D. Cal. June 19, 2013); *Ellsworth*, 908 F.Supp.2d at *1081; *Montanez*, 876 F.Supp.2d 513-14; *McNeary-Calloway*, 2012 WL 1029502, at *23-29; *Williams v. Wells Fargo Bank, N.A.*, No. 11-21233 CIV, 2011 WL 4901346, at *2, 4 (S.D. Fla. Oct. 14, 2011); and *Am. Bankers Ins. Co. v. Wells*, 819 So.2d 1196 (Miss. 2001).

56. Finally, HUD's Handbook on Administration of Insured Home Mortgages, HUD 4330.1 REV-5, 2-11, states that "[t]he mortgagee may not insist on more coverage than necessary to protect its investment." *See* Ex. 14. Given this limitation, it is improper for U.S. Bank to force-place hazard insurance coverage in excess of the outstanding balance of the loan.

---

[10] *See* Patrick A. Randolph, Jr., A Mortgagee's Interest in Casualty Loss Proceeds: Evolving Rules and Risks, 32 REAL PROP. PROB. & TR. J. 1, 31-42 (1997).

*See, e.g., Arnett v. Bank of America, N.A.*, 874 F.Supp.2d 1021, 1026 (D. Ore. 2012) (reasoning in force-placed flood insurance context that "the lender's financial interest in the property is equal to the amount of the outstanding loan"); *Philadelphia v. Bonds*, 287 S.W. 587, 590 (Ark. 1926) ("The amount of the insurance was largely in excess of the debt due the bank, and it had no right to carry insurance in a larger amount than was necessary to protect its security. Sufficient insurance was being carried for this purpose, and the action of the bank in issuing the policy … was therefore unauthorized."); *accord, WL RGS Contractors, Inc. v. GC Builders, Inc.*, 348 F.3d 897, 900 (10th Cir. 2003) ("It is well settled that a mortgagee's recovery and insurable interest are limited to the amount of debt secured by the insured property.").

### V.  CLASS ACTION ALLEGATIONS

#### A.  Class Definitions

57.    Plaintiff brings this action against U.S. Bank pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of herself and all other persons similarly situated. As such, Plaintiff seeks to represent the following classes:

> Nationwide Kickback Class:  All persons who have or had a loan or line of credit with U.S. Bank secured by their residential property in the United States, and who were charged for lender-placed hazard insurance by U.S. Bank within the applicable limitations period.

> Nationwide Backdated Coverage Class:  All persons who have or had a loan or line of credit with U.S. Bank secured by their residential property in the United States, who were charged for backdated lender-placed hazard insurance by U.S. Bank within the applicable limitations period (The Nationwide Kickback Class and the Nationwide Backdated Coverage Class will be collectively referred to as the "Nationwide Classes").

> Escrow Subclass:  All persons in the Nationwide Classes whose force-placed hazard insurance premiums were escrowed by U.S. Bank.

> Missouri Subclass:  All persons in the Nationwide Classes whose mortgage or line of credit owned or serviced by U.S. Bank was secured by property located within the State of Missouri.

58.     Except as otherwise provided herein, the term "Class" shall collectively refer to each of the Nationwide Kickback Class, the Nationwide Backdated Coverage Class, the Escrow Subclass, and the Missouri Subclass defined above.  Plaintiff reserves the right to modify or amend the definitions of the proposed Classes before the Court determines whether certification is appropriate, based on discovery obtained in this action.

59.     Defendant subjected Plaintiff and the respective Class members to the same unfair, unlawful, and deceptive practices and harmed them in the same manner.  The conduct described above is the Defendant's standard and undisputed business practices.

**B.     Numerosity**

60.     The individual Class members are so numerous that joinder of all Class members is impracticable.  U.S. Bank is one of the largest mortgage servicers in the United States, and services a massive number of mortgage loans in Missouri and nationwide.  The individual Class members are ascertainable, as the names and addresses of all Class members can be identified in the business records maintained by the Defendant.  The precise number of members in each class can only be determined through discovery, but certainly number in the thousands, are clearly more than can be consolidated in one complaint, and it would be impractical for each to bring suit individually.  Plaintiff does not anticipate any difficulties in the management of the action as a class action.

**C.     Commonality**

61.     There are questions of law and fact that are common to the claims of Plaintiff and the Class members.  These common questions predominate over any individual questions that go to any particular member of the Class.  These common questions of law and fact include, *inter alia*:

a)  Whether U.S. Bank or its affiliates accept kick-backs, commissions, or other compensation from ASIC or other vendors in return for U.S. Bank's force-placed hazard insurance business, or did so during the relevant class period;

b)  Whether U.S. Bank or its affiliates were obligated to perform *bona fide* work or services in return for the kick-backs, "commissions," or other compensation that they accepted, and whether the value of such work or services was commensurate with the kick-backs or commissions that were received;

c)  Whether ASIC performed hazard insurance tracking services for U.S. Bank, and whether those services were billed below cost or below market rates, as a second type of kick-back or in-kind compensation to U.S. Bank for its force-placed hazard insurance business;

d)  Whether it is reasonable and fair to backdate force-placed hazard insurance coverage, and whether U.S. Bank has a legitimate financial interest in backdating coverage for time periods in the past during which no loss occurred;

e)  Whether U.S. Bank engaged in a scheme to manipulate the force-placed insurance process to maximize financial gain for itself and/or its affiliates at the expense of Plaintiff and the Class members;

f)  Whether U.S. Bank breached its standard form mortgage contracts with Plaintiff and the Class members by (1) arranging for kick-backs, commissions, or other compensation for itself or its affiliates in connection with force-placed hazard insurance; (2) backdating force-placed hazard insurance; and (3) otherwise manipulating to force-placed insurance process.

g)      Whether U.S. Bank owes its customers a duty of good faith and fair dealing, and if so, whether U.S. Bank breached this duty by (1) arranging for kick-backs, commissions, or other compensation for itself or its affiliates in connection with force-placed hazard insurance; (2) backdating force-placed hazard insurance; or (3) otherwise manipulating the force-placed insurance process;

h)      Whether U.S. Bank was unjustly enriched by the conduct alleged in this Complaint and other conduct that may reasonably be inferred;

i)      Whether U.S. Bank's conduct as described herein violates TILA by, *inter alia*, changing its hazard insurance requirements after-the-fact without proper notice or consent;

j)      Whether U.S. Bank wrongfully converted funds from Plaintiff and the Escrow Subclass as a result of the conduct alleged in this Complaint and other conduct that may reasonably be inferred;

k)      the appropriateness and proper form of any declaratory or injunctive relief; and

l)      the appropriateness and proper measure of restitution, damages, and other monetary relief.

**D.      Typicality**

62.     Plaintiff is a member of the Class as Defendant's own records plainly reveal. Plaintiff's claims are typical of the claims of the Class because of the similarity, uniformity, and common purpose of the unlawful conduct of Defendant. Each class member has sustained, and will continue to sustain, damages in the same manner as Plaintiff as a result of Defendant's wrongful conduct.

23

63.     Specifically, Plaintiff's claims are typical of the members of the Classes.  Among other things:  (a) U.S. Bank treated Plaintiff consistent with other Class members in accordance with U.S. Bank's uniform policies and practices; (b) the form letters that Plaintiff received are typical of those received by other Class members; (c) it was typical for U.S. Bank and/or its affiliates to receive kick-backs or commissions in connection with lender-placed hazard insurance; (d) it was typical for U.S. Bank to backdate lender-placed hazard insurance policies; and (e) it was typical for U.S. Bank to  force-place hazard insurance through ASIC and engage in the foregoing manipulation of the force-placed insurance process with the assistance of ASIC..

E.     **Adequacy of Representation**

64.     Plaintiff is an adequate representative of the Class and will fairly and adequately protect the interests of the Class.  Plaintiff is committed to the vigorous prosecution of this action and has retained competent counsel, experienced in litigation of this nature, to represent her. There is no hostility between Plaintiff and the unnamed class members.

65.     Plaintiff anticipates no difficulty in the management of this litigation as a class action.

66.     To prosecute this case, Plaintiff has chosen counsel that is very experienced in class action litigation and has the financial and legal resources to meet the substantial costs and legal issues associated with this type of litigation.

67.     Both Plaintiff and her counsel are committed to representing the interests of the Class members, and seek to obtain a just and equitable resolution of this action on behalf of the Class members.

**F.**  **Requirements of FED. R. CIV. P. 23(b)(1) & (2)**

68.     This case is maintainable as a class action under Fed. R. Civ. P. 23(b)(1) because prosecuting separate actions by or against individual Class members would create a risk of inconsistent or varying adjudications with respect to individual Class members that would establish incompatible standards of conduct for the party opposing the class.

69.     This case is maintainable as a class action under Fed. R. Civ. P. 23(b)(2) because Defendant has acted or failed to act in a manner generally applicable to the Class, thereby making injunctive relief or corresponding declaratory relief appropriate with respect to the Class as a whole.

**G.**  **Requirements of FED. R. CIV. P. 23(b)(3)**

70.     Class certification is also appropriate under Fed. R. Civ. P. 23(b)(3) because questions of law and fact common to Plaintiff and each Class member's claims predominate over any questions of law and fact affecting only individual members of the Class.  All claims by Plaintiff and the unnamed class members are based on the force-placed insurance policies that Defendants unlawfully secured, and their deceptive and egregious actions involved in securing the force-placed policy.

71.     Common issues predominate when, as here, liability can be determined on a class-wide basis, even when there will be some individualized damages determinations.

72.     As a result, when determining whether common questions predominate, courts focus on the liability issue, and if the liability issue is common to the class as is the case at bar, common questions will be held to predominate over individual questions.

**H.**  **Superiority**

73.     A class action is also superior to individual actions because (among other things):

a)       Joinder of all class members would create extreme hardship and inconvenience for the affected customers as they reside throughout the United States;

b)       Individual claims by Class members are impractical because the costs to pursue individual claims exceed the value of what any one Class member has at stake. As a result, individual class members have no interest in prosecuting and controlling separate actions, and Plaintiff is unaware of any individual actions against U.S. Bank involving similar claims relating to force-placed hazard insurance;

c)       Class certification will obviate the need for unduly duplicative litigation that might result in inconsistent judgments concerning Defendants' practices;

d)       There are no known individual class members who are interested in individually controlling the prosecution of separate actions;

e)       The interests of justice will be well-served by resolving the common disputes of the Class members in one forum; and

f)       The action is manageable as a class action.

## VI.      CAUSES OF ACTION

### COUNT I

**Breach of Contract/Breach of the Covenant of Good Faith and Fair Dealing**
**(Asserted on Behalf of All of the Class)**

74.      Plaintiff, on behalf of herself and all similarly situated Class members, re-alleges and incorporates by reference the allegations in the preceding paragraphs.

75.      Plaintiff and the Class members have mortgage contracts with U.S. Bank that are similar in all material respects.

76.      Under these mortgage contracts, U.S. Bank is permitted to obtain force-placed hazard insurance in the event of a coverage lapse, however, it is only permitted to do so in a

manner and amount that is reasonable and appropriate to protect the lender's insurable interest in the property.  Although these mortgage contracts allow U.S. Bank to charge the Class members for force-placed insurance, it does not allow it to charge homeowners, including Plaintiff and the Class members, for illegal kick-backs, commissions, or other compensation.

77.     Further, under these mortgage contracts, Defendant is not permitted to charge Plaintiff or the Class members for servicing the mortgage.

78.     Defendant breached its mortgage contracts with Plaintiff and the Class members by, among other things:

a)      Choosing an insurance policy in bad faith and in contravention of the parties' reasonable expectations, by purposefully selecting high-priced force-placed hazard insurance policies to maximize their own profits;

b)      Failing to seek competitive bids on the open market and instead contracting to create "back room" deals whereby the insurance policies are continually purchased through the same companies without seeking a competitive price;

c)      Assessing inflated and unnecessary insurance policy premiums against Plaintiff and the Class members and misrepresenting the reason for the high cost of the policies;

d)      Collecting a percentage or allowing its affiliates to collect a percentage of whatever premiums are charged to Plaintiff and the Class members and not passing that percentage on to Plaintiff and the Class members, thereby creating the incentive to seek the highest-priced premiums possible;

e)    Charging Plaintiff and the Class members premiums for insurance that was unnecessary and duplicative inasmuch as U.S. Bank remained insured through a lender loss payable clause or similar clause under the associated mortgage;

f)    Charging Plaintiff and the Class members for commissions when the insurance is prearranged and no commission is due;

g)    Charging Plaintiff and the Class members for having the vendor perform their obligations of administering its mortgage portfolio which is not chargeable to Plaintiff or the Class members;

h)    Failing to refund Plaintiff and the Class members once proof of insurance has been provided; and

i)    Failing to refund Plaintiff and Class members the kick-back amounts received by U.S. Bank.

79.    As a direct, proximate, and legal result of the aforementioned breaches of contract, Plaintiff and the Class have suffered damages and continue to suffer damages.

80.    Good faith and fair dealing are elements of every contract and imposes upon each party a duty of good faith and fair dealing in its performance. Common law calls for substantial compliance with the spirit, not just the letter, of a contract in its performance.  Where an agreement permits one party to unilaterally determine the extent of the other's required performance, an obligation of good faith in making such determination is implied.

81.    Plaintiff and the Class members' respective mortgage contracts contained a provision that allowed the mortgage servicer to force-place an insurance policy on the borrower if their homeowner's insurance lapsed.

82. Mortgage servicers or lenders, like U.S. Bank are permitted to unilaterally choose the company to purchase force-placed insurance from and have an obligation to exercise their discretion in good faith by not choosing a company capriciously and in bad faith (solely for their or their affiliates' own financial gain) instead of seeking to continue to reestablish the prior insurance policies or seeking competitive bids on the open market in good faith.

83. The respective mortgage contracts and insurance policies of Plaintiff and the Class members contained an implied covenant of good faith and fair dealing whereby Defendant agreed to perform the obligations under the policies in good faith, to deal fairly with Plaintiff and the Class, and not to charge unnecessary inflated fees for the force-placed insurance for the purposes of maximizing their own profits at the expense of Plaintiff and Class members.

84. Defendant breached its duty of good faith and fair dealing in at least the following respects:

a) Using their discretion to choose an insurance policy in bad faith and in contravention of the reasonable expectations of Plaintiff and Class members by purposefully selecting high-priced force-placed insurance policies to maximize its own profits;

b) Failing to seek competitive bids on the open market and instead contracting to create "back room" deals whereby the insurance policies are continually purchased through the same companies without seeking a competitive price;

c) Assessing inflated, unnecessary, and/or duplicative insurance policy premiums against Plaintiff and the Class members and misrepresenting the reason for the high cost of the policies;

d)      Collecting a percentage or allowing their affiliates to collect a percentage of whatever premiums are charged to Plaintiff and the Class members and not passing that percentage on to Plaintiff and Class members, thereby creating the incentive to seek the highest priced premiums possible;

e)      Charging Plaintiff and the Class members for commissions when the insurance is prearranged and no commission is due;

f)      Charging Plaintiff and the Class members an inflated premium due to the captive reinsurance arrangement; and

g)      Charging Plaintiff and the Class members for having the vendor perform their obligation of administering its mortgage portfolios which is not chargeable to Plaintiff or the Class members.

85.    As a direct, proximate, and legal result of the aforementioned breaches of the covenant of good faith and fair dealing, Plaintiff and the Class members have suffered damages and continue to suffer damages.

WHEREFORE, Plaintiff, on behalf of herself and all similarly situated Class members, seek compensatory damages resulting from Defendant's breach of contract.  Plaintiff, on behalf of herself and all similarly situated Class members, further seeks all relief deemed appropriate by this Honorable Court, including attorneys' fees and costs.

## COUNT II

### UNJUST ENRICHMENT
### (Asserted on Behalf of All of the Class)

86.    Plaintiff, on behalf of herself and all similarly situated Class members, re-alleges and incorporates by reference the allegations in the preceding paragraphs as if fully set forth herein and further alleges as follows.

87.     U.S. Bank received from Plaintiff and the Class members an inequitable benefit in the form of charges related to force-placed hazard insurance policies that include, but are not limited to, unwarranted kick-backs, commissions, or other compensation.

88.     Retention of these payments would be unjust and are the result of overcharging and overreaching.

89.     Defendant entered into an agreement whereby the vendor would provide force-placed insurance policies to Defendant through their preferred insurance carriers, such as ASIC, for the portfolio of loans it monitored which were paid for by Plaintiff and the Class at prices that were far higher than the market rates for policies that provide even more coverage.  Defendant knew that the charges for these policies were inflated, contained hidden or unlawful charges, and were not the result of good faith practices.

90.     Commissions or kick-backs were paid directly to Defendant and/or its affiliates in order to be able to exclusively provide force-placed insurance policies.

91.     The kick-backs and commissions were subsumed into the price of the insurance premium and ultimately paid by the borrower.  Therefore, Defendant had the incentive to charge and collect inflated prices for the force-placed insurance policies.

92.     As a result, Plaintiff and the Class members have conferred a direct benefit on Defendant, and Defendant, with full knowledge of this benefit, voluntarily accepted and retained the benefit conferred on it.

93.     Defendant will be unjustly enriched if it is allowed to retain the benefit, and each class member is entitled to restitution in an amount equal to the amount each Class member enriched Defendant and for which Defendants have been unjustly enriched.

94.     Nothing herein seeks to end Defendant's practice of placing force-placed hazard insurance on properties.  Rather, Plaintiff and the Class members simply seeks that Defendant engages in this practice in good faith and not by charging Plaintiff and Class members for unlawful, unnecessary, hidden, and/or noncompetitive prices.

95.     Restitution, under an unjust enrichment theory, is appropriate in lieu of breach of contract damages when Plaintiff had an express contract, but it was also procured by fraud or is unenforceable or not completely effective.  Because Plaintiff's unjust enrichment claim is based on Defendant's commonly practiced kick-back scheme and the unjust retention of those commissions including for backdated premiums, Plaintiff and Class members are entitled to restitution.

96.     Plaintiff's claims for Defendant's unjust enrichment are equitable in nature and independent of any breach of contract by U.S. Bank.

WHEREFORE, Plaintiff, on behalf of herself and similarly situated Class members, demands an award against Defendant for the amounts equal to the amount that each Class member enriched Defendant and for which Defendant has been unjustly enriched. Plaintiff, on behalf of herself and all similarly situated Class members, further seeks all relief deemed appropriate by this Court, including attorneys' fees and costs.

## COUNT III

### CONVERSION
### (Asserted on Behalf of the Escrow Subclass)

97.     Plaintiff, on behalf of herself and all similarly situated Escrow Subclass members, re-alleges and incorporates by reference the allegations in the preceding paragraphs.

98.     U.S. Bank had and continues to have a duty to maintain and preserve the mortgage accounts and mortgage escrow accounts of Plaintiff and of the Escrow Subclass, and to prevent their diminishment or alteration through its own wrongful acts.

99.     U.S. Bank wrongfully and intentionally collected insurance premiums from borrowers' mortgage escrow accounts or deducted such payments from borrowers' mortgage escrow accounts.

100.    U.S. Bank collected these premiums by wrongfully and intentionally withdrawing specific and readily identifiable funds from Plaintiff and borrowers' mortgage escrow accounts or misappropriating funds paid to borrowers' account balances for their regular monthly mortgage payments in order to fund its force-placed insurance scheme.

101.    U.S. Bank has retained these funds unlawfully without the consent of Plaintiff and/or the consent of the Escrow Subclass and has deprived them from exercising control over these funds which belong to Plaintiff and the Escrow Subclass.

102.    U.S. Bank intends to permanently deprive Plaintiff and the Escrow Subclass of these funds.

103.    Plaintiff and the Escrow Subclass properly own these funds, not U.S. Bank, who now claims that it is entitled to ownership of the funds contrary to the rights of Plaintiff and the Escrow Subclass.

104.    Plaintiff and the Escrow Subclass are entitled to the immediate possession of these funds.

105.    U.S. Bank has wrongfully converted these specific and readily identifiable funds.

106.    U.S. Bank's wrongful conduct is of a continuing nature.

107.    As a direct and proximate result of U.S. Bank's wrongful conversion, Plaintiff and the Escrow Subclass have suffered and continue to suffer damages.  Plaintiff and the Escrow Subclass are entitled to recover from U.S. Bank all damages and costs permitted, including all amounts that U.S. Bank wrongfully converted, which are specific and readily identifiable.

WHEREFORE Plaintiff, on behalf of herself and similarly situated Escrow Subclass members, demand an award against U.S. Bank for the amounts equal to the amount U.S. Bank wrongfully converted from each Plaintiff and Escrow Subclass member.  Plaintiff, on behalf of herself and all similarly situated Escrow Subclass members, further seek all relief deemed appropriate by this Court, including attorneys' fees and costs.

## COUNT IV

### VIOLATION OF THE TRUTH IN LENDING ACT
### (15 U.S.C. § 1601 *et seq.*)
### (Asserted on Behalf of All of the Class)

108.    Plaintiff, on behalf of herself and all similarly situated Class members, re-alleges and incorporates by reference the allegations in the preceding paragraphs, and behalf of herself and the Class.

93.    Mortgage loan agreements between U.S. Bank and its customers, including those of Plaintiff and the Class members, are subject to the disclosure requirements of the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601 *et seq.*, and all related regulations, commentary, and interpretive guidance promulgated by the Federal Reserve Board.

94.    U.S. Bank is a "creditor" as defined by TILA because it owned Plaintiff's note and mortgage, and those of the Class members, and changed the terms of those mortgages so as to create a new mortgage obligation, of which U.S. Bank was the creditor.  When U.S. Bank added force-placed hazard insurance charges to Plaintiff's mortgage account, and to those of the

Class members, and charged Plaintiff and the Class members interest on these charges, it created a new loan subject to the requirements of TILA.  Alternatively, U.S. Bank is the "assignee" of Plaintiff's note and mortgage, and of the notes and mortgages of the Class members, as defined by 15 U.S.C. § 1641.

95.     U.S. Bank is required to clearly, conspicuously, and timely disclose all finance charges, other charges, and third-party charges that may be imposed in connection with a mortgage loan or line of credit.

96.     U.S. Bank's disclosure inaccuracies are apparent on the face of the disclosures to Plaintiff because:  (a) the inaccuracies arose out of U.S. Bank's unilaterally changing the terms of Plaintiff's loan; (b) anti-coercion disclosures included with Plaintiff's mortgage explicitly stated that the lender was prohibited from conditioning its extension of credit on the borrowers purchasing any insurance product from the lender or its affiliates; (c) the force-placed insurance disclosure included in Plaintiff's mortgage specifically stated that force-placed insurance would only be obtained in the amount "necessary" for the lender to protect its "rights in the property"; (d) Plaintiff's mortgage does not authorize kick-backs, commissions, or other compensation to U.S. Bank or its affiliates for the purchase of force-placed insurance; and (e) Plaintiff's mortgage does not authorize backdated force-placed hazard insurance.

97.     U.S. Bank is further required to accurately and fully disclose the terms of the legal obligations between the parties.

98.     U.S. Bank violated TILA by (a) failing to clearly, fully, and accurately disclose its hazard insurance requirements in its mortgages and (b) failing at all times to disclose the amount and nature of the kick-backs, commissions, or other forms of compensation U.S. Bank would receive for the purchase of hazard insurance.

99.     Specifically, when U.S. Bank added the force-placed premium charge to the outstanding principal amount of Plaintiff's loan, a new debt obligation was created. At the moment U.S. Bank created this new debt obligation, it was required to provide new disclosures.

100.    12 C.F.R. § 226.18(d) requires disclosures of finance charges, which includes force-placed insurance premiums, including kick-backs under 12 C.F.R. § 226.4(b)(8). U.S. Bank failed to disclose the nature and amount of all finance charges associated with the force-placed insurance premiums it withdrew from Plaintiff's escrow accounts and added to their principal balance. This failure violated TILA.

101.    Plaintiff's TILA claim is timely. The statute of limitations on Plaintiff's TILA claim did not begin to run and/or was equitably tolled until such time that she had a reasonable opportunity to discover U.S. Bank's TILA violations and complain about such violations. It would be manifestly unjust and inconsistent with the purposes of TILA to apply and enforce an earlier accrual date for Plaintiff's TILA claim.

102.    U.S. Bank systematically and pervasively engaged in similar violations of TILA to the detriment of Plaintiff and other members of the Class.

103.    Plaintiff and the Class members have been injured and have suffered a monetary loss as a result of U.S. Bank's violations of TILA.

WHEREFORE, Plaintiff, on behalf of herself and similarly situated Class members, demand an award, of actual damages and a penalty of $500,000 or 1% of U.S. Bank's net worth, as provided by 15 U.S.C. § 1640(a)(1) and (2). Plaintiff and the Class are also entitled to recovery of attorneys' fees and costs to be paid by U.S. Bank, as provided by 15 U.S.C. § 1640(a)(3). In addition, Plaintiff and the Class are entitled to a declaration that U.S. Bank's

actions violate TILA, and corresponding injunctive relief enjoining U.S. Bank from engaging in further such violations.

## VII.   PRAYER FOR RELIEF

WHEREFORE, Plaintiff on behalf of herself and all similarly situated Class members demand judgment against U.S. Bank as follows:

A.      Declaring this action to be a proper class action maintainable pursuant to Rule 23(a) and Rules 23(b)(1), 23(b)(2) or 23(b)(3) of the Federal Rules of Civil Procedure and declaring Plaintiff and her counsel to be representatives of the classes as defined above;

B.      Finding that U.S. Bank breached its contracts with Plaintiff and the Class members, and breached the implied covenant of good faith and fair dealing;

C.      Awarding damages sustained by Plaintiff and the Class members as a result of U.S. Bank's breaches of contract and breaches of the implied covenant of good faith and fair dealing, together with prejudgment interest;

D.      Finding that U.S. Bank has been unjustly enriched, and requiring U.S Bank to refund all unjust benefits to Plaintiff and the Class members, together with prejudgment interest;

E.      Finding that U.S. Bank has wrongfully converted funds, and requiring U.S. Bank to refund all such wrongfully converted funds to Plaintiff and the Escrow Subclass members;

F.      Finding that U.S. Bank violated TILA and requiring U.S. Bank to pay damages as well as the statutory penalty as provided thereunder;

G.      Awarding Plaintiff and the Class members costs and disbursements, and reasonable allowances for the fees of Plaintiff's and the Class members' counsel and experts, and reimbursement of expenses; and

H.      Granting such other and further relief as the Court deems just and equitable.

## VIII.   DEMAND FOR JURY TRIAL

Plaintiff and the Class members request a jury trial for any and all Counts for which a trial by jury is permitted by law.


Dated:  November 15, 2013                              Respectfully submitted,

                                                                 /s/ *Robert E. DeRose*
                                                                 Robert E. DeRose (OH Bar No. 0055214)
                                                                 Robi Baishnab (OH Bar No. 0086195)
                                                                 **BARKAN MEIZLISH HANDELMAN**
                                                                 **GOODIN DEROSE WENTZ, LLP**
                                                                 250 East Broad Street, 10th Floor
                                                                 Columbus, Ohio 43215
                                                                 Telephone:  (614) 221-4221
                                                                 Facsimile:   (614) 744-2300
                                                                 E-mail:        bderose@barkanmeizlish.com
                                                                                   rbaishnab@barkanmeizlish.com

                                                                 *Local Counsel*

                                                                 *and*

                                                                 Kenneth G. Gilman (Pro Hac Vice Anticipated)
                                                                 kgilman@gilmanpastor.com
                                                                 **GILMAN LAW LLP**
                                                                 Beachway Professional Center Tower
                                                                 3301 Bonita Beach Road, Suite 202
                                                                 Bonita Springs, FL  34134
                                                                 Phone:  (239) 221-8301
                                                                 Fax:      (239) 676-8224

                                                                 *and*

                                                                 Kai H. Richter (Pro Hac Vice Anticipated)
                                                                 krichter@nka.com
                                                                 **NICHOLS KASTER, PLLP**
                                                                 4600 IDS Center
                                                                 80 South Eighth Street
                                                                 Minneapolis, MN 55402
                                                                 Phone:  (612) 256-3200
                                                                 Fax:      (612) 215-6870

                                                                 *Attorneys for Plaintiff and*
                                                                 *the Proposed Class*